IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO:

GEOFFREY T. MOTT,

Plaintiff

, v.

INLET PLAZA CONDOMINIUM
ASSOCIATION, INC., a Florida corporation,
RONALD EARLY, individually,
ROGER BRINNER, individually,
DOUGLAS WAYNE SABRA, individually,
ROBERT CULLEN, and ANNE McCARTHY,
individually.

Defendants.

_____/

## **COMPLAINT**

COMES NOW, Plaintiff, GEOFFREY T. MOTT, by and through his undersigned counsel, sues the Defendant, INLET PLAZA CONDOMINIUM ASSOCIATION, INC and states as follows:

## **JURISDICTIONAL ALLEGATIONS**

1.      The Court has original jurisdiction pursuant to 11 U.S.C. § 1331, 42 U.S.C. § 3613, as this lawsuit is brought under the Fair Housing Act, 42 U.S.C. § 3601 et seq.

2.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) because (b) a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred and are occurring within this judicial district and a substantial part of the property that is the subject of the action is situated within this judicial district.

1

3.      At all times material hereto, INLET PLAZA CONDOMINIUM ASSOCIATION, INC is a Florida not-for-profit Florida corporation doing business in Palm Beach County, Florida ("INLET") which operates a condominium association within the meaning of Chapter 718, Florida Statutes.

4.      At all times material hereto, Ronald Early, Roger Brinner, Douglas Wayne Sabra, Robert Cullen and Anne McCarthy are the Board Members of the Inlet Board of Directors (hereinafter the "Board") and are *sui juris*.

5.      At all times relevant hereto, Mr. Mott is a practicing attorney in the State of New Jersey and has been diagnosed with a long history of obsessive-compulsive syndrome, PTSD and Depression as a result of severe childhood trauma.

6.      Mr. Mott is a person with disabilities that limit one or more major life functions including his ability to work, concentrate and think – including interference with his executive function -- and as such he is a qualified individual with disabilities under the Fair Housing Act.

7.      In 2003. Mr. Mott was disbarred from the practice of law in the State of New York related to conduct which he is accused to have committed in 1998 or earlier in connection with borrowing of money from clients.

8.      The conduct for which he was disbarred in 2003 and the nature of his condition(s) are connected and were solely a manifestation of his disability. Since 2003, Mr. Mott has been in treatment for this disability and it has not manifested again.

9.      On July 11, 2012, Mr. Mott was reinstated as a member of the New York Bar in good standing.

10.     On or about February 7, 2023, Plaintiff, as Buyer, entered into an "As Is" Residential Contract with Seller for the purchase of Unit # 304 of INLET (the "Unit"). A true and correct copy of the Contract is attached hereto and incorporated herein as **Exhibit "A."**

11.     The Unit at issue is a "dwelling" within the meaning of 42 U.S.C. § 3602(b), and "dwelling units" within the meaning of 24 C.F.R. § 100.21.

12.     INLET requires the approval of its Board of Directors as a condition of admission as a member of the condominium.

13.     On February 10, 2023, Plaintiff timely made application to the Association and otherwise discharged his obligations with regard to the application for Association approval. A true and correct copy of the Application is attached hereto **as Exhibit "B"**.

14.     On February 15, 2023, the Association issued a letter of denial to Mr. Mott.

15.     The sole reason for the Association's denial of Mr. Mott was the conduct set forth in the New York disbarment order.

16.     Such order detailed the underlying disability and treatment for his compulsive borrowing, depression and post-traumatic stress disorder as well as his treatment.

17.     Mott thereafter filed a lawsuit in the Circuit Court of Palm Beach County, Florida related to the denial by INLET on March 22, 2023 (the "State Litigation").

18.     On April 17, 2023, MOTT sought to amend his Complaint in the Litigation and in that filing sought relief including a finding that he was admitted as a member of INLET as a result of their refusal to admit him due to his disability.

19.     Further, during the State Litigation, INLET and the BOARD were made aware of certain details related to MOTT's disability(ies) and continued to refuse to approve him for membership in INLET.

20.     On May 30, 2024, Cathryn Harris-Marchesi, Esq. made formal requests for a reasonable accommodation pursuant to the Federal Fair Housing Act, specifically that the reasons for disbarment from the New York State Bar not be considered in consideration of MOTT's application to purchase the Property and that given the absence of any other basis that his application for purchase be approved immediately (the "Request"). A copy of the reference requested is attached hereto as **Exhibit "C."**

21.     Accompanying the aforementioned request was communication from MOTT's treating physician dating back to 2008 supporting the request.

22.     On June 6, 2024, having received no response from INLET, the undersigned communicated to counsel for INLET, from the firm Cole Scott & Kissane ("CSK"), requesting an update on the status of the request and inviting any further inquiry on the matter. A copy of the referenced communication is attached hereto as **Exhibit "D"**.  On June 6, 2024, counsel for INLET responded "we are in receipt of the attached. Laura will reach out and set up a call."

23.     A call with counsel for INLET took place on June 17, 2024, during which counsel for the INLET informed the undersigned that INLET was consulting with another law firm related to the Request and ask that Mr. Mott wait until no later than June 21, 2024 for a response.

24.     Thereafter, having not heard from anyone on June 21, 2024, the undersigned followed back up with counsel for INLET pertaining to the Request.  To which CSK walked back the statement that INLET was consulting with another law firm and asked for still more time at which time the undersigned acquiesced and requested a response by June 24, 2024.  A copy of the referenced communications are attached hereto as **Exhibit "E."**

25.     On June 24, 2024, the undersigned was contacted by counsel for INLET from the firm Becker & Poliakoff ("Becker"), representing that Becker, the Defendant's Association counsel in and prior to the commencement of the State Litigation was now handling the matter and requesting yet another extension until July 1, 2024 to respond to the Request.   The undersigned agreed to the requested extension and encouraged counsel to reach out if she wanted to discuss the Request.  A copy of the referenced communications are attached hereto as **Exhibit "F."**

26.     As of the date of this filing, no response to **Exhibit "C"** was received and counsel for INLET has not sent any further communications to the undersigned pertaining to the Request.

27.     Plaintiff has retained the undersigned counsel to represent him in this cause and has agreed to pay them a reasonable fee for their services.

28.     Plaintiff has complied with all necessary conditions precedent to the bringing of this action, or such conditions precedent has been waived.

### COUNT I- FAILURE TO REASONABLY ACCOMMODATE IN VIOLATION OF 42  U.S.C. § 3604(f)(3)

29.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 28 above as though fully set forth herein.

30.     Each member of the Board was personally involved, and/or authorized, and/or ratified the denial of accommodation for MOTT herein.

31.     At all times material, INLET and the Board had actual knowledge that Mott is disabled and regarded him as a person with a disability.

32.     Pursuant to 42 U.S.C. § 3604(f)(3)(b), it is unlawful to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.

33.     On May 30, 2024, a request for reasonable accommodation was made on MOTT's behalf to disregard his disability-related disbarment in their decision-making in approving him for a sale of a dwelling.

34.     The Defendants had detailed information regarding MOTT's disability through MOTT's Amended Complaint in State Court, deposition testimony of him and his wife and documents provided to INLET and the Board in discovery in the State Litigation. Notwithstanding the breadth of information, counsel for MOTT invited the Defendants to enter into the interactive process and obtain any further information that they would need to make a determination of the reasonableness or necessity of the accommodation.

35.     MOTT's disability, even when active, would not constitute a direct threat to the safety of others or would create substantial harm.  Furthermore, with the over twenty years of treatment, any danger has long since been mitigated.

36.     Additionally, the delivery of the Request was an express and explicit request for reasonable accommodation that was ignored.

37.     At no time did INELT or the Board or any of its employees, attempt to discuss MOTT's behavior with him.  In fact, unlike every other applicant to come before the Board of INLET, MOTT was denied without so much as interview.

38.     At no time did INLET or the Board or any of its employees, seek to retain any opinion from a medical professional as to MOTT's behavior and needs.

39.     Defendant's repeated refusal to admit MOTT and refusal to respond or otherwise discuss same in the time provided by the Request constitutes a denial of the reasonable accommodation request.

40.     Defendant's continuing failure to modify its existing policies and practices to accommodate the disabilities of MOTT is discriminatory and unlawful.

41.     Such actions by Defendants were in total and reckless disregard of MOTT's federally protected rights and indifferent to his disability and needs.

WHEREFORE, Plaintiff, GEOFFREY T. MOTT, demands judgment against INLET and the Board, to declare that the actions of Defendants violated the Fair Housing Amendments Act, by discriminating against persons with disabilities and award Plaintiffs compensatory and punitive damages, and their attorneys' fees and costs as well as injunctive relief as follows:

a.  That the Court deem Defendant's denial of the accommodation unlawful and enjoin Defendants to approve the sale of the subject residence.

b.  That the Court order Defendants to provide a notice to all owners and tenants of INLET of their rights under the Fair Housing Act, including their right to have accommodations because of a disability;

c.  That the Court order that INLET instruct all of its employees, agents, independent contractors and/or other persons who deal with the rental or management of any and all housing currently managed and/or controlled by INLET, of the terms of the Court's Order and the Fair Housing Act, Fair Housing Act and implementing regulations;

d.  That the Court order that INLET maintain for inspection by Plaintiff and all other tenants or owners at its condominium offices, copies of the Fair Housing Act, Fair Housing Amendments Act and implementing regulations;

e.  And grant any other such relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all issues so triable.

Respectfully Submitted this 3rd day of July, 2024.

NEXTERRA LAW
*Counsel for Plaintiff*
1680 Michigan Avenue, Suite 700 # 182
Miami Beach, FL 33139
Tel: (954) 929-0679
Fax: (888) 632-4944
sliberty@nexterralaw.com
service@nexterralaw.com

By:   /s/ Eric A. Jacobs
Eric A. Jacobs, Esq.
Fla. Bar No.: 189065
Steven M. Liberty, Esq.
Fla. Bar No.: 110754

EXHIBIT "A"

**Douglas Elliman**

## "AS IS" Residential Contract For Sale And Purchase
**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**

**FloridaRealtors**

1* **PARTIES: David J. Gury** _____ ("Seller"),
2* and **Geoffrey T. Mott** _____ ("Buyer"),
3 agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4 (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase
5 and any riders and addenda ("Contract"):
6 **1. PROPERTY DESCRIPTION:**
7*     (a) Street address, city, zip: **6885 Ocean Blvd. Bldg. B, Unit 304**     **Ocean Ridge**     33435
8*     (b) Located in: **Palm Beach**      County, Florida. Property Tax ID #: **46-43-45-22-18-000-3040**
9*     (c) Real Property: The legal description is
10     **INLET PLAZA CONDO UNIT 304**     **ZONING RHM**
11
12     together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
13     attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
14     by other terms of this Contract.
15     (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
16     which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
17     purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), light fixture(s), drapery rods
18     and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), thermostat(s),
19     doorbell(s), television wall mount(s) and television mounting hardware, security gate and other access
20     devices, mailbox keys, and storm shutters/storm protection items and hardware ("Personal Property").
21*     Other Personal Property items included in this purchase are: **all attached light fixtures, all kitchen appliances**
22     **washer and dryer, all attached mirrors and all window treantments**
23     Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
24*     (e) The following items are excluded from the purchase: _____
25

26*                                **PURCHASE PRICE AND CLOSING** 6/6/2023     $1,175,000.00
27* **2. PURCHASE PRICE** (U.S. currency):..................................................................... ~~$ 1,000,000.00~~
28*     (a) Initial deposit to be held in escrow in the amount of **(checks subject to Collection)** ....... $ **100,000.00**
29     The initial deposit made payable and delivered to "Escrow Agent" named below
30*     **(CHECK ONE): (i)** ☐ accompanies offer or **(ii)** ☐ is to be made within **5**____ (if left
31     blank, then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN
32     OPTION (ii) SHALL BE DEEMED SELECTED.
33*     Escrow Agent Name: **Princeton Title and Escrow LLC**
34*     Address: **5550 Glades Rd Boca Raton FL 33431**     Phone: **561-886-0494**
35*     E-mail: _____     Fax: _____
36*     (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
37*     days after Effective Date ......................................................................................$ _____
38     (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
39*     (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 ........ _____
                                              2/6/2023
40*     (d) Other: _____ $1,075,000.00
41     (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
42*     transfer or other Collected funds (see STANDARD S)...................................... ~~$ 900,000.00~~
43 **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44     (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45     ~~February 06, 2023 at 5pm~~ , this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46     Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day
47*     the counter-offer is delivered.
48     (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
49     initialed and delivered this offer or final counter-offer ("Effective Date").
50 7/2023 **4. CLOSING; CLOSING DATE:** The closing of this transaction shall occur when all funds required for closing are
51     received by Closing Agent and Collected pursuant to STANDARD S and all closing documents required to be
52     furnished by each party pursuant to this Contract are delivered ("Closing"). Unless modified by other provisions of

**Buyer's Initials** _____                            Page 1 of 12                             **Seller's Initials** _____

2/6/2023   May 15, 2023

53* this Contract, the Closing shall occur on ~~on or before August 15, 2023~~ ("Closing Date"), at the time
54 established by the Closing Agent.

**5. EXTENSION OF CLOSING DATE:**

55
56 (a) In the event Closing funds from Buyer's lender(s) are not available on Closing Date due to Consumer Financial
57 Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"), if Paragraph 8(b) is
58 checked, Loan Approval has been obtained, and lender's underwriting is complete, then Closing Date shall be
59 extended for such period necessary to satisfy CFPB Requirements, provided such period shall not exceed 7
60 days.

61 (b) If an event constituting "Force Majeure" causes services essential for Closing to be unavailable, including the
62 unavailability of utilities or issuance of hazard, wind, flood or homeowners' insurance, Closing Date shall be
63 extended as provided in STANDARD G.

**6. OCCUPANCY AND POSSESSION:**

64
65 (a) Unless Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property
66 to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all
67 personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and
68* codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss
69 to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and
70 shall have accepted the Property in its existing condition as of time of taking occupancy, see Rider T PRE-
71 CLOSING OCCUPANCY BY BUYER.

72* (b) ☐ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is
73 subject to a lease(s) or any occupancy agreements (including seasonal and short-term vacation rentals) after
74 Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof
75 shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all
76 within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of
77* occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such
78* election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the
79 Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s)
80 and Seller's affidavit shall be provided pursuant to STANDARD D, except that tenant Estoppel Letters shall not
81 be required on seasonal or short-term vacation rentals. If Property is intended to be occupied by Seller after
82 Closing, see Rider U POST-CLOSING OCCUPANCY BY SELLER.

83* **7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under
84* this Contract; ☒ may assign but not be released from liability under this Contract; or ☐ may not assign this Contract.
85 IF NO BOX IS CHECKED, THEN BUYER MAY NOT ASSIGN THIS CONTRACT.

86 **FINANCING**

87 **8. FINANCING:**

88* ☒ (a) This is a cash transaction with no financing contingency.

89* ☐ (b) This Contract is contingent upon, within _____ (if left blank, then 30) days after Effective Date ("Loan
90* Approval Period"): (1) Buyer obtaining approval of a ☐ conventional ☐ FHA ☐ VA or ☐ other _____
91* (describe) mortgage loan for purchase of the Property for a **(CHECK ONE):** ☐ fixed, ☐ adjustable, ☐ fixed or
92 adjustable rate in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left
93 blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of _____ (if left blank, then 30)
94 years ("Financing"); and (2) Buyer's mortgage broker or lender having received an appraisal or alternative valuation
95 of the Property satisfactory to lender, if either is required by lender, which is sufficient to meet the terms required
96 for lender to provide Financing for Buyer and proceed to Closing ("Appraisal").

97* (i) Buyer shall make application for Financing within _____ (if left blank, then 5) days after Effective Date
98 and use good faith and diligent effort to obtain approval of a loan meeting the Financing and Appraisal terms of
99 Paragraph 8(b)(1) and (2), above, ("Loan Approval") within the Loan Approval Period and, thereafter, to close this
100 Contract. Loan Approval which requires Buyer to sell other real property shall not be considered Loan Approval
101 unless Rider V is attached.

102 Buyer's failure to use good faith and diligent effort to obtain Loan Approval during the Loan Approval Period shall
103 be considered a default under the terms of this Contract. For purposes of this provision, "diligent effort" includes,
104 but is not limited to, timely furnishing all documents and information required by Buyer's mortgage broker and lender
105 and paying for Appraisal and other fees and charges in connection with Buyer's application for Financing.

106 (ii) Buyer shall, upon written request, keep Seller and Broker fully informed about the status of Buyer's
107 mortgage loan application, loan processing, appraisal, and Loan Approval, including any Property related conditions
108 of Loan Approval. Buyer authorizes Buyer's mortgage broker, lender, and Closing Agent to disclose such status

Buyer's Initials _____  Page 2 of 12  Seller's Initials _____

109 and progress and release preliminary and finally executed closing disclosures and settlement statements, as
110 appropriate and allowed, to Seller and Broker.
111     (iii) If within the Loan Approval Period, Buyer obtains Loan Approval, Buyer shall notify Seller of same in writing
112 prior to expiration of the Loan Approval Period; or, if Buyer is unable to obtain Loan Approval within Loan Approval
113 Period but Buyer is satisfied with Buyer's ability to obtain Loan Approval and proceed to Closing, Buyer shall deliver
114 written notice to Seller confirming same, prior to the expiration of the Loan Approval Period.
115     (iv) If Buyer is unable to obtain Loan Approval within the Loan Approval Period, or cannot timely meet the
116 terms of Loan Approval, all after the exercise of good faith and diligent effort, Buyer may terminate this Contract by
117 delivering written notice of termination to Seller prior to expiration of the Loan Approval Period; whereupon, provided
118 Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer
119 and Seller from all further obligations under this Contract.
120     (v) If Buyer fails to timely deliver any written notice provided for in Paragraph 8(b)(iii) or (iv), above, to Seller
121 prior to expiration of the Loan Approval Period, then Buyer shall proceed forward with this Contract as though
122 Paragraph 8(a), above, had been checked as of the Effective Date; provided, however, Seller may elect to terminate
123 this Contract by delivering written notice of termination to Buyer within 3 days after expiration of the Loan Approval
124 Period and, provided Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit
125 thereby releasing Buyer and Seller from all further obligations under this Contract.
126     (vi) If Buyer has timely provided either written notice provided for in Paragraph 8b(iii), above, and Buyer
127 thereafter fails to close this Contract, the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's
128 default or inability to satisfy other contingencies of this Contract; or (2) Property related conditions of the Loan
129 Approval (specifically excluding the Appraisal valuation) have not been met unless such conditions are waived by
130 other provisions of this Contract; in which event(s) the Buyer shall be refunded the Deposit, thereby releasing Buyer
131 and Seller from all further obligations under this Contract.
132*     ☐ (c) Assumption of existing mortgage (see Rider D for terms).
133*     ☐ (d) Purchase money note and mortgage to Seller (see Rider C for terms).

134                   **CLOSING COSTS, FEES AND CHARGES**

135 **9. CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**

136     **(a) COSTS TO BE PAID BY SELLER:**
137     • Documentary stamp taxes and surtax on deed, if any     • HOA/Condominium Association estoppel fees
138     • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)     • Recording and other fees needed to cure title
139     • Title search charges (if Paragraph 9(c)(iii) is checked)     • Seller's attorneys' fees
140*     • Municipal lien search (if Paragraph 9(c)(i) or (iii) is checked)     • Other:_____
141     • Charges for FIRPTA withholding and reporting
142     If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11
143 a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at
144 Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay
145 such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.
146     **(b) COSTS TO BE PAID BY BUYER:**
147     • Taxes and recording fees on notes and mortgages     • Loan expenses
148     • Recording fees for deed and financing statements     • Appraisal fees
149     • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)     • Buyer's Inspections
150     • Survey (and elevation certification, if required)     • Buyer's attorneys' fees
151     • Lender's title policy and endorsements     • All property related insurance
152     • HOA/Condominium Association application/transfer fees     • Owner's Policy Premium (if Paragraph
153     • Municipal lien search (if Paragraph 9(c)(iii) is checked)     9 (c)(iii) is checked.)
154*     • Other: **additional brokerage fee of $295 to Douglas Elliman**
155*     **(c) TITLE EVIDENCE AND INSURANCE:** At least _____ (if left blank, then 15, or if Paragraph 8(a) is checked,
156 then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida
157 licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title
158 Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be
159 obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property,
160 Seller shall furnish a copy to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy
161 premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set
162 forth below. The title insurance premium charges for the owner's policy and any lender's policy will be calculated
163 and allocated in accordance with Florida law, but may be reported differently on certain federally mandated
164 closing disclosures and other closing documents. For purposes of this Contract "municipal lien search" means a

165 search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded
166 liens imposed pursuant to Chapters 153, 159 or 170, F.S., in favor of any governmental body, authority or agency.
167 **(CHECK ONE):**
168* ☒ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the
169 premium for Buyer's lender's policy and charges for closing services related to the lender's policy,
170 endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other
171 provider(s) as Buyer may select; or
172* ☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
173 services related to Buyer's lender's policy, endorsements and loan closing; or
174* ☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Buyer shall designate Closing Agent. Seller shall
175 furnish a copy of a prior owner's policy of title insurance or other evidence of title and pay fees for: (A) a
176 continuation or update of such title evidence, which is acceptable to Buyer's title insurance underwriter for
177 reissue of coverage; (B) tax search; and (C) municipal lien search. Buyer shall obtain and pay for post-Closing
178 continuation and premium for Buyer's owner's policy, and if applicable, Buyer's lender's policy. Seller shall
179* be obligated to pay more than $_____ (if left blank, then $200.00) for abstract continuation or title
180 search ordered or performed by Closing Agent.
181 (d) **SURVEY:** At least 5 days prior to Closing Date, Buyer may, at Buyer's expense, have the Real Property
182 surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real
183 Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.
184* (e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☒ N/A shall pay for a home warranty plan issued by
185* _____ at a cost not to exceed $_____. A home
186 warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
187 appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.
188 (f) **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
189 ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
190 ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
191 improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being
192 imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may
193 be paid in installments **(CHECK ONE):**
194* ☒ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
195 Installments prepaid or due for the year of Closing shall be prorated.
196* ☐ (b) Seller shall pay, in full, prior to or at the time of Closing, any assessment(s) allowed by the public body
197 to be prepaid. For any assessment(s) which the public body does not allow prepayment, OPTION (a) shall be
198 deemed selected for such assessment(s).
199 IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.
200 This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district
201 (CDD) pursuant to Chapter 190, F.S., or special assessment(s) imposed by a special district pursuant to
202 Chapter 189, F.S., which lien(s) or assessment(s) shall be prorated pursuant to STANDARD K.

203 **DISCLOSURES**
204 **10. DISCLOSURES:**
205 (a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in
206 sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
207 exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding
208 radon and radon testing may be obtained from your county health department.
209 (b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller
210 does not know of any improvements made to the Property which were made without required permits or made
211 pursuant to permits which have not been properly closed or otherwise disposed of pursuant to Section 553.79,
212 F.S. If Seller identifies permits which have not been closed or improvements which were not permitted, then
213 Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession,
214 knowledge, or control relating to improvements to the Property which are the subject of such open permits or
215 unpermitted improvements.
216 (c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
217 desires additional information regarding mold, Buyer should contact an appropriate professional.
218 (d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood
219 zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to
220 improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area"

Buyer's Initials _____ Page 4 of 12 Seller's Initials _____

221 or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and
222 Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and/or
223 flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage
224 through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer
225* may terminate this Contract by delivering written notice to Seller within _____ (if left blank, then 20) days after
226 Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further
227 obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone
228 designation of Property.

229 (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
230 required by Section 553.996, F.S.

231 (f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is
232 mandatory.

233 (g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS**
234 **CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS'**
235 **ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

236 (h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT
237 PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO
238 PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
239 IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER
240 PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE
241 COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

242 (i) **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Seller shall inform Buyer in writing if
243 Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer
244 and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller
245 is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status,
246 under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD
247 V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax
248 advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to
249 FIRPTA.

250 (j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are
251 not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding
252 sentence, Seller extends and intends no warranty and makes no representation of any type, either express or
253 implied, as to the physical condition or history of the Property. Except as otherwise disclosed in writing Seller
254 has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected
255 building, environmental or safety code violation.

256 **PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

257 **11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the
258 Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS
259 IS Maintenance Requirement"). See Paragraph 9(a) for escrow procedures, if applicable.

260 **12. PROPERTY INSPECTION; RIGHT TO CANCEL:**
261* (a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have* __15__ *(if left blank, then 15)*
262 *days after Effective Date ("Inspection Period") within which to have such inspections of the Property*
263 *performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole*
264 *discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering*
265 *written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely*
266 *terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall*
267 *be released of all further obligations under this Contract; however, Buyer shall be responsible for*
268 *prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting*
269 *from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the*
270 *preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to*
271 *terminate granted herein, Buyer accepts the physical condition of the Property and any violation of*
272 *governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to*
273 *Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all*
274 *repairs and improvements required by Buyer's lender.*



Buyer's Initials _____   Page 5 of 12   Seller's Initials _____

(b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

(c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations, consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to expend, any money.

(d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties to Buyer.

## ESCROW AGENT AND BROKER

**13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow within the State of Florida and, subject to Collection, disburse them in accordance with terms and conditions of this Contract. Failure of funds to become Collected shall not excuse Buyer's performance. When conflicting demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.

In any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or termination of this Contract.

**14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition, square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor.

Buyer's Initials _____    Page 6 of 12    Seller's Initials _____

331  Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and
332  paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve
333  Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker
334  will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

335  ### DEFAULT AND DISPUTE RESOLUTION

336  **15. DEFAULT:**

337  (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
338  including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit
339  for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and
340  in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under
341  this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's
342  rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall
343  be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share
344  shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.

345  (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after
346  reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract,
347  Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting
348  from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific
349  performance.

350  This Paragraph 15 shall survive Closing or termination of this Contract.

351  **16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and
352  Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled
353  as follows:

354  (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to
355  resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph
356  16(b).

357  (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida
358  Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules").
359  The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be
360  sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16
361  may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph
362  16 shall survive Closing or termination of this Contract.

363  **17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted
364  by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in
365  conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover
366  from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the
367  litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

368  ### STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")

369  **18. STANDARDS:**

370  **A. TITLE:**

371  (i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in
372  Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall
373  be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at
374  or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance
375  in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property,
376  subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions,
377  prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the
378  Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of
379  entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than
380  10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and
381  subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach
382  addendum); provided, that, none prevent use of Property for **RESIDENTIAL PURPOSES.** If there exists at Closing
383  any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall
384  be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance
385  with law.

Buyer's Initials _____   Page 7 of 12   Seller's Initials _____

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

386 (ii) **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller
387 in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is
388 delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of
389 receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after
390 receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer
391 shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver
392 written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this
393 Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If
394 Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period,
395 deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which
396 Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or
397 (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has
398 passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c)
399 electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all
400 further obligations under this Contract. If after reasonable diligent effort, Seller is unable to timely cure defects, and
401 Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit,
402 thereby releasing Buyer and Seller from all further obligations under this Contract.

403 **B. SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon
404 encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable
405 governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of
406 such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later
407 than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and
408 Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a
409 prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the
410 preparation of such prior survey, to the extent the affirmations therein are true and correct.

411 **C. INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to
412 the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.

413 **D. LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from
414 tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security
415 deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s)
416 the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit
417 and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or
418 Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph
419 6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller
420 within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this
421 Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under
422 this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations
423 thereunder.

424 **E. LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing
425 statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or
426 repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been
427 improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all
428 general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth
429 names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges
430 for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been
431 paid or will be paid at Closing.

432 **F. TIME: Time is of the essence in this Contract.** Calendar days, based on where the Property is located, shall
433 be used in computing time periods. Other than time for acceptance and Effective Date as set forth in Paragraph 3,
434 any time periods provided for or dates specified in this Contract, whether preprinted, handwritten, typewritten or
435 inserted herein, which shall end or occur on a Saturday, Sunday, national legal public holiday (as defined in 5
436 U.S.C. Sec. 6103(a)), or a day on which a national legal public holiday is observed because it fell on a Saturday or
437 Sunday, shall extend to the next calendar day which is not a Saturday, Sunday, national legal public holiday, or a
438 day on which a national legal public holiday is observed.

439 **G. FORCE MAJEURE:** Buyer or Seller shall not be required to exercise or perform any right or obligation under
440 this Contract or be liable to each other for damages so long as performance or non-performance of the right or
441 obligation, or the availability of services, insurance, or required approvals essential to Closing, is disrupted, delayed,

Buyer's Initials _____    Page 8 of 12    Seller's Initials _____

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

442 caused or prevented by a Force Majeure event. "Force Majeure" means: hurricanes, floods, extreme weather,
443 earthquakes, fires, or other acts of God, unusual transportation delays, wars, insurrections, civil unrest, or acts of
444 terrorism, governmental actions and mandates, government shut downs, epidemics, or pandemics, which, by
445 exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to prevent or overcome.
446 The Force Majeure event will be deemed to have begun on the first day the effect of the Force Majeure prevents
447 performance, non-performance, or the availability of services, insurance or required approvals essential to Closing.
448 All time periods affected by the Force Majeure event, including Closing Date, will be extended a reasonable time
449 up to 7 days after the Force Majeure event no longer prevents performance under this Contract; provided, however,
450 if such Force Majeure event continues to prevent performance under this Contract more than 30 days beyond
451 Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit
452 shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

453 **H. CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's,
454 personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters
455 described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be
456 transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this
457 Contract.

458 **I.    CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**
459 (i)   **LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by
460 the party paying for the owner's policy of title insurance and will take place in the county where the Real Property
461 is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title
462 insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic
463 means.

464 (ii) **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of
465 sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s),
466 owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid
467 receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable,
468 the survey, flood elevation certification, and documents required by Buyer's lender.

469 (iii) **FinCEN GTO REPORTING OBLIGATION.** If Closing Agent is required to comply with a U.S. Treasury
470 Department's Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Order ("GTO"), then Buyer
471 shall provide Closing Agent with essential information and documentation related to Buyer and its Beneficial
472 Owners, including photo identification, and related to the transaction contemplated by this Contract which are
473 required to complete mandatory reporting, including the Currency Transaction Report; and Buyer consents to
474 Closing Agent's collection and report of said information to IRS.

475 (iv) **PROCEDURE:** The deed shall be recorded upon Collection of all closing funds. If the Title Commitment
476 provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing
477 procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to Collection of all closing**
478 **funds,** disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.

479 **J.   ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
480 for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following
481 escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent
482 for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of
483 Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from
484 date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all
485 Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and,
486 simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-
487 convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand
488 for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect
489 except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.

490 **K.   PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of
491 the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
492 (including special benefit tax assessments imposed by a CDD pursuant to Chapter 190, F.S., and assessments
493 imposed by special district(s) pursuant to Chapter 189, F.S.), interest, bonds, association fees, insurance, rents
494 and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable,
495 in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required
496 by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited
497 to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on
498 current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's assessment

Buyer's Initials _____    Page 9 of 12    Seller's Initials  N. H

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

499  is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's
500  assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements
501  on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st
502  of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be
503  agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an
504  informal assessment taking into account available exemptions. In all cases, due allowance shall be made for the
505  maximum allowable discounts and applicable homestead and other exemptions.  A tax proration based on an
506  estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K
507  shall survive Closing.
508  **L.  ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller
509  shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections,
510  including a walk-through (or follow-up walk-through if necessary) prior to Closing.
511  **M.  RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
512  ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not
513  exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed
514  pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated
515  cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of
516  restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase
517  Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of
518  Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the
519  Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation
520  with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.
521  **N.  1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with
522  Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate
523  in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however,
524  cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent
525  upon, nor extended or delayed by, such Exchange.
526  **O.  CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT**
527  **EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public or official records. This
528  Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in
529  interest. Whenever the context permits, singular shall include plural and one gender shall include all. Notice and
530  delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party
531  shall be as effective as if given by or to that party. All notices must be in writing and may only be made by mail,
532  facsimile transmission, personal delivery or email. A facsimile or electronic copy of this Contract and any signatures
533  hereon shall be considered for all purposes as an original. This Contract may be executed by use of electronic
534  signatures, as determined by Florida's Electronic Signature Act and other applicable laws.
535  **P.  INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement
536  of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or
537  representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change
538  in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended
539  to be bound by it.
540  **Q.  WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this
541  Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or
542  rights.
543  **R.  RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten
544  or handwritten provisions shall control all printed provisions of this Contract in conflict with them.
545  **S. COLLECTION or COLLECTED:** "Collection" or "Collected" means any checks tendered or  received, including
546  Deposits, have become actually and finally collected and deposited in the account of  Escrow Agent or Closing
547  Agent. Closing and disbursement of funds and delivery of closing documents  may be delayed by Closing Agent
548  until such amounts have been Collected in Closing Agent's accounts.
549  **T.  RESERVED.**
550  **U.  APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State
551  of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the
552  county where the Real Property is located.
553  **V.  FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA,
554  Section 1445 of the Internal Revenue Code ("Code") requires the buyer of the real property to withhold up to 15%
555  of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

556 (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate
557 from the IRS authorizing a reduced amount of withholding.

558 (i)  No withholding is required under Section 1445 of the Code if the Seller is not a "foreign person". Seller can
559 provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury,
560 stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and
561 home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer
562 shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds
563 to the IRS.

564 (ii)  If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced
565 or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the
566 reduced sum required, if any, and timely remit said funds to the IRS.

567 (iii)  If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has
568 provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been
569 received as of Closing, Buyer shall, at Closing, withhold the applicable percentage of the amount realized by Seller
570 on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in
571 escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the
572 parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted
573 directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.

574 (iv)  In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
575 transaction, Seller shall deliver to Buyer, at Closing, the additional Collected funds necessary to satisfy the
576 applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
577 disbursement in accordance with the final determination of the IRS, as applicable.

578 (v)  Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
579 8288 and 8288-A, as filed.

580 **W.  RESERVED**

581 **X.  BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller*
582 *and against any real estate licensee involved in the negotiation of this Contract for any damage or defects*
583 *pertaining to the physical condition of the Property that may exist at Closing of this Contract and be*
584 *subsequently discovered by the Buyer or anyone claiming* by, through, under or against the Buyer. *This*
585 *provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive*
586 *Closing.*

587 ## ADDENDA AND ADDITIONAL TERMS

589 **19.  ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
590 Contract (**Check if applicable**):

| | | |
|---|---|---|
| ☒ A.  Condominium Rider | ☐ M.  Defective Drywall | ☐ X.  Kick-out Clause |
| ☐ B.  Homeowners' Assn. | ☐ N.  Coastal Construction Control | ☐ Y.  Seller's Attorney Approval |
| ☐ C.  Seller Financing | Line | ☐ Z.  Buyer's Attorney Approval |
| ☐ D.  Mortgage Assumption | ☐ O.  Insulation Disclosure | ☐ AA.  Licensee Property Interest |
| ☐ E.  FHA/VA Financing | ☒ P.  Lead Paint Disclosure (Pre-1978) | ☐ BB.  Binding Arbitration |
| ☐ F.  Appraisal Contingency | ☐ Q.  Housing for Older Persons | ☐ CC.  Miami-Dade County |
| ☐ G.  Short Sale | ☐ R.  Rezoning | Special Taxing District |
| ☐ H.  Homeowners/Flood Ins. | ☐ S.  Lease Purchase/ Lease Option | ☐ DD.  Seasonal/Vacation Rentals |
| ☐ I.  RESERVED | ☐ T.  Pre-Closing Occupancy | ☐ EE.  PACE Disclosure |
| ☐ J.  Interest-Bearing Acct. | ☐ U.  Post-Closing Occupancy | ☐ Other: |
| ☐ K.  RESERVED | ☐ V.  Sale of Buyer's Property | |
| ☐ L.  RESERVED | ☐ W.  Back-up Contract | |

Buyer's Initials _____     Page 11 of 12     Seller's Initials _____

591* **20. ADDITIONAL TERMS:**

592
593 In addition to the commission offered by Seller, Buyer agrees to an Additional Broker Commission in
594 the amount of $295, payable to Douglas Elliman Florida LLC at closing for services performed upon
    execution of the Purchase and Sale Agreement.

595
596
597
598
599
600
601
602
603
604
605
606
607
608

609 **COUNTER-OFFER**

610 ☐ Seller counters Buyer's offer.

611 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
612 **ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**

613 **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

614 *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the*
615 *terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and*
616 *conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all*
617 *interested persons.*

618 AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK
619 TO BE COMPLETED.

620* Buyer: _____ **Geoffrey T. Mott** Date: 2/5/2023

621* Buyer: _____ Date: _____

622* Seller: _____David J. Gury_____ Date: February 7, 2023

623* Seller: _____ Date: _____

624 Buyer's address for purposes of notice                Seller's address for purposes of notice
625* **51 Green Meadow Ln, Huntington NY 11743**
626*
627*

628 **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers
629 entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct
630 Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
631 agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
632 retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation
633 made by Seller or Listing Broker to Cooperating Brokers.

634* **Cuppy Kraft**                                       **Andrea Chang**
635 **Cooperating Sales Associate, if any**                **Listing Sales Associate**

636* **Douglas Elliman**                                    **Lang Realty**
637 **Cooperating Broker, if any**                          **Listing Broker**

Buyer's Initials _____                Page 12 of 12                Seller's Initials _____

## Comprehensive Rider to the
## Residential Contract For Sale And Purchase
THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR



If initialed by all parties, the clauses below will be incorporated into the Florida Realtors®/Florida Bar Residential Contract
For Sale And Purchase between **David J. Gury** _____ (SELLER)
and **Geoffrey T. Mott** _____ (BUYER)
concerning the Property described as **6885 Ocean Blvd, Unit B,** _____

**Buyer's Initials** _____ _____     **Seller's Initials** ____DJG____ _____

### A. CONDOMINIUM RIDER

1. **CONDOMINIUM ASSOCIATION APPROVAL:**
   The Association's approval of Buyer (**CHECK ONE**): ☒ is ☐ is not required. If approval is required, this Contract is
   contingent upon Buyer being approved by the Association no later than **5**_____ (if left blank, then 5) days
   prior to Closing. Within **5**_____ (if left blank, then 5) days after Effective Date Seller shall initiate the
   approval process with the Association and Buyer shall apply for such approval. Buyer and Seller shall sign and deliver
   any documents required by the Association in order to complete the transfer of the Property and each shall use
   diligent effort to obtain such approval, including making personal appearances if required. If Buyer is not approved
   within the stated time period, this Contract shall terminate and Buyer shall be refunded the Deposit, thereby releasing
   Buyer and Seller from all further obligations under this Contract.

2. **RIGHT OF FIRST REFUSAL:**
   (a) The Association (**CHECK ONE**): ☒ has ☐ does not have a right of first refusal ("Right"). If the Association has
       a Right, this Contract is contingent upon the Association, within the time permitted for the exercise of such Right,
       either providing written confirmation to Buyer that the Association is not exercising that Right, or failing to timely
       exercise such Right pursuant to the terms of the Declaration of Condominium ("Declaration", which reference
       includes all amendments thereto).
   (b) The members of the Association (**CHECK ONE**): ☐ have ☒ do not have a Right. If the members do have a
       Right, this Contract is contingent upon the members, within the time permitted for the exercise of such Right,
       either providing written confirmation to Buyer that the members are not exercising that Right, or failing to timely
       exercise such Right pursuant to the terms of the Declaration.
   (c) Buyer and Seller shall, within **5**_____ (if left blank, then 5) days after Effective Date, sign and deliver
       any documents required as a condition precedent to the exercise of the Right, and shall use diligent effort to
       submit and process the matter with the Association and members, including personal appearances, if required.
   (d) If, within the stated time period, the Association, the members of the Association, or both, fail to provide the
       written confirmation or the Right has not otherwise expired, then this Contract shall terminate and the Deposit
       shall be refunded to the Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.
   (e) If the Association or a member timely exercises its or their Right, this Contract shall terminate and the Deposit
       shall be refunded to Buyer (unless this Contract provides otherwise), thereby releasing Buyer and Seller from all
       further obligations under this Contract, and Seller shall pay to Broker the full commission at Closing in recognition
       that Broker procured the sale.

3. **FEES; ASSESSMENTS; PRORATIONS; LITIGATION:**
   (a) Condominium Association assessment(s) and Rents: Seller represents that the current Association
       assessment(s) installments is/are

   $ **1,522.33**_____ payable (**CHECK ONE**): ☒ monthly ☐ quarterly ☐ semi-annually ☐ annually

   and if more than one Association assessment
   $ _____ payable (**CHECK ONE**): ☐ monthly ☐ quarterly ☐ semi-annually ☐ annually

   and the current rent on recreation areas, if any, is
   $ _____ payable (**CHECK ONE**): ☐ monthly ☐ quarterly ☐ semi-annually ☐ annually

## A. CONDOMINIUM RIDER (CONTINUED)

All annual assessments levied by the Association and rent on recreational areas, if any, shall be made current by Seller at Closing, and Buyer shall reimburse Seller for prepayments.

(b) Fees: Seller shall, at Closing, pay all fines imposed against the Unit by the Condominium Association as of Closing Date and any fees the Association charges to provide information about the Property, assessment(s) and fees.

*If Property is part of a Homeowners' Association, see Rider B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE for further information including additional assessments and fees.*

(c) Special Assessments and Prorations:

    (i) Seller represents that Seller is not aware of any special or other assessment that has been levied by the Association or that has been an item on the agenda, or reported in the minutes, of the Association within twelve (12) months prior to Effective Date, ("pending") except as follows:

        See addendum #1

    (ii) If special assessments levied or pending exist as of the Effective Date are disclosed above by Seller and may be paid in installments (**CHECK ONE**): ☐ Buyer ☐ Seller (if left blank, then Buyer) shall pay installments due after Closing Date. **If Seller is checked, Seller shall pay the assessment in full prior to or at the time of Closing.**

    (iii) If special assessments levied or pending exist as of the Effective Date and have not been disclosed above by Seller, then Seller shall pay such assessments in full at the time of Closing.

    (iv) If, after Effective Date, the Association imposes a special assessment for improvements, work or services, which was not pending as of the Effective Date, then Seller shall pay all amounts due before Closing Date and Buyer shall pay all amounts due after Closing Date.

    (v) A special assessment shall be deemed levied for purposes of this paragraph on the date when the assessment has been approved as required for enforcement pursuant to Florida law and the condominium documents listed in Paragraph 5.

    (vi) Association assets and liabilities, including Association reserve accounts, shall not be prorated.

(d) Litigation: Seller represents that Seller is not aware of pending or anticipated litigation affecting the Property or the common elements, if any, except as follows:

**4. SPRINKLER SYSTEM RETROFIT:**

If, pursuant to Sections 718.112(2)(l), F.S., the Association has voted to forego retrofitting its fire sprinkler system or handrails and guardrails for the condominium units, then prior to Closing Seller shall furnish to Buyer the written notice of Association's vote to forego such retrofitting.

**5. NON-DEVELOPER DISCLOSURE:**
(CHECK ONE)

    ☐ **(a) THE BUYER HEREBY ACKNOWLEDGES THAT BUYER HAS BEEN PROVIDED A CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION OF THE ASSOCIATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT MORE THAN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND LEGAL HOLIDAYS, PRIOR TO EXECUTION OF THIS CONTRACT.**

    ☒ **(b) THIS AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND LEGAL HOLIDAYS, AFTER THE DATE OF EXECUTION OF THIS AGREEMENT BY THE BUYER AND RECEIPT BY BUYER OF A CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT IF SO REQUESTED IN WRITING. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND**

## A. CONDOMINIUM RIDER (CONTINUED)

**LEGAL HOLIDAYS, AFTER THE BUYER RECEIVES THE DECLARATION, ARTICLES OF INCORPORATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT IF REQUESTED IN WRITING. BUYER'S RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT CLOSING.**

**6. BUYER'S REQUEST FOR DOCUMENTS:**
Buyer is entitled, at Seller's expense, to current copies of the condominium documents specified in Paragraph 5, above. Buyer **(CHECK ONE):** ☒ requests ☐ does not request a current copy of the documents specified in Paragraph 5, above. If this Contract does not close, Buyer shall immediately return the documents to Seller or reimburse Seller for the cost of the documents.

**7. BUYER'S RECEIPT OF DOCUMENTS:**
**(COMPLETE AND CHECK ONLY IF CORRECT)** ☐ Buyer received the documents described in Paragraph 5, above, on _____.

**8. COMMON ELEMENTS; PARKING:**
The Property includes the unit being purchased and an undivided interest in the common elements and appurtenant limited common elements of the condominium, as specified in the Declaration. Seller's right and interest in or to the use of the following parking space(s), garage, and other areas are included in the sale of the Property and shall be assigned to Buyer at Closing, subject to the Declaration:
Parking Space(s) # _____   Garage # **52**_____   Other: **storage locker 304**_____

**9. INSPECTIONS AND REPAIRS:**
The rights and obligations arising under Paragraphs 11 and 12 of this Contract to maintain, repair, replace or treat are limited to Seller's individual condominium unit and unless Seller is otherwise responsible do not extend to common elements, limited common elements, or any other part of the condominium property.

**10. GOVERNANCE FORM:**
PURSUANT TO CHAPTER 718, FLORIDA STATUTES, BUYER IS ENTITLED TO RECEIVE FROM SELLER A COPY OF THE GOVERNANCE FORM IN THE FORMAT PROVIDED BY THE DIVISION OF FLORIDA CONDOMINIUMS, TIMESHARES AND MOBILE HOMES OF THE DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, SUMMARIZING THE GOVERNANCE OF THE CONDOMINIUM ASSOCIATION.



# Comprehensive Rider to the
# Residential Contract For Sale And Purchase
**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**

If initialed by all parties, the clauses below will be incorporated into the Florida Realtors®/Florida Bar Residential Contract For Sale And Purchase between _____ **DAVID J. GURY** _____ (SELLER) and_____ **GEOFFREY T. MOTT** _____ (BUYER) concerning the Property described as_____ 6885 N. OCEAN BLVD., UNIT 304, OCEAN RIDGE, FL 33435 _____

***Buyer's Initials*** _____ _____   ***Seller's Initials*** _____ _____

## P. LEAD-BASED PAINT DISCLOSURE
### (Pre-1978 Housing)

<u>Lead-Based Paint Warning Statement</u>
"Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspection in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase."

**Seller's Disclosure (INITIAL)**
_____ **(a)** Presence of lead-based paint or lead-based paint hazards (**CHECK ONE BELOW**):
  ☐ Known lead-based paint or lead-based paint hazards <u>are present</u> in the housing.
  ☒ Seller has <u>no knowledge</u> of lead-based paint or lead-based paint hazards in the housing.
_____ **(b)** Records and reports available to the Seller (**CHECK ONE BELOW**):
  ☐ Seller has provided the Buyer with all available records and reports pertaining to lead-based paint or lead-based paint hazards in the housing. List documents: _____

  ☐ Seller has no reports or records pertaining to lead-based paint or lead-based paint hazards in the housing.

**Buyer's Acknowledgement (INITIAL)**
_____ **(c)** Buyer has received copies of all information listed above.
_____ **(d)** Buyer has received the pamphlet *Protect Your Family* from *Lead in Your Home*.
_____ **(e)** Buyer has (**CHECK ONE BELOW**):
  ☐ Received a 10-day opportunity (or other mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint or lead-based paint hazards; or
  ☐ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint or lead-based paint hazards.

**Licensee's Acknowledgement (INITIAL)**
_____ **(f)** Licensee has informed the Seller of the Seller's obligations under 42 U.S.C. 4852(d) and is aware of Licensee's responsibility to ensure compliance.

**Certification of Accuracy**
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| | | | |
|---|---|---|---|
| SELLER | Date | BUYER | Date |
| *David J. Gury* | December 17, 2022 | | 2/7/2023 |
| SELLER | Date | BUYER | Date |
| *Andrea Chang* | December 15th, 2022 | *ShKral* | February 7, 2023 |
| Listing Licensee | Date | Selling Licensee | Date |

**Any person or persons who knowingly violate the provisions of the Residential Lead-Based Paint Hazard Reduction Act of 1992 may be subject to civil and criminal penalties and potential triple damages in a private civil lawsuit.**
**Page 1 of 1   P. LEAD-BASED PAINT DISCLOSURE**
CR-6   Rev. 10/21 © 2021 Florida Realtors® and The Florida Bar.  All rights reserved.

# Comprehensive Rider to the
# Residential Contract For Sale And Purchase
**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**

**LANG**REALTY

**If initialed by all parties**, the clauses below will be incorporated into the Florida Realtors®/Florida Bar Residential Contract
For Sale And Purchase between _____ **DAVID J. GURY** _____ (SELLER)
and _____ **GEOFFREY T. MOTT** _____ (BUYER)
concerning the Property described as _____ 6885 N. OCEAN BLVD., UNIT 304, OCEAN RIDGE, FL 33435 _____

**Buyer's Initials** _____ _____          **Seller's Initials** ___DJG___ _____

## Q. HOUSING FOR OLDER PERSONS

Buyer acknowledges that the owners' association, developer or other housing provider intends the Property to provide housing for older persons as defined by federal law. While Seller and Broker make no representation that the Property actually qualifies as housing for older persons, the housing provider has stated that it provides housing for persons who are ☐ 62 years of age and older ☒ 55 years of age and older.

## EXHIBIT "B"

Confidential

The Inlet Plaza Association Inc.
Application for Membership

BOARD OF DIRECTORS, representing the members of Inlet Plaza Association Inc. Ocean Ridge, Florida:

Request is hereby made by the undersigned for membership in the above Association. The undersigned agrees to accept membership and abide by all the terms and provisions of said Association as contained in the Declaration of Condominium, its attachments and exhibit thereto (as amended), the By-Laws and the Rules and Regulations. I agree for myself and on behalf of all persons who may use the unit I seek to purchase.

Name of Applicant _GEOFFREY T. MOTT, ESQ._

Residence Address _51 Green Meadow Lane, Huntington, New York 11743_ | _1647 Bay Walk, Ocean Beach, Fire Island, NY 11770_

Phone and Email Address _631 561 7939; gmott@geoffreymottlaw.com_

Florida Address _____

Business Address _7600 Jericho Turnpike, Suite 105, Woodbury, NY 11797_ _734 Valley Road, Suite 103, Upper Montclair, NJ 07043_

Nature of Business _Law Offices of Geoffrey T. Mott, P.C._

Date of Birth _May 17, 1955_ Age _67_

Colleges Attended and Degrees _Georgetown University (BS, F.S.)*_

Married ___✓___ Widowed _____ Divorced _____

_* Catholic University (M.S.L.S.);_
_Hofstra University School of Law (J.D.)_

Page 1

Information Regarding Wife

Maiden Name _Mait Angelica Mott_

Date of Birth _9/8/59_          Age: _63_

Colleges Attended and Degrees _Upsala Universitet Juris_

Names and Ages of Children _Geoffrey T. Mott, Jr._

Bank References &-Phone Number _Chase (516) 714-0075_

Name of Contact _Matthew Kisson_

Country, Golf and Yacht Club Affiliations:

_Ocean Beach, Fire Island, N.Y. Association_

Acquainted with the following at The Inlet Plaza

List three additional personal references (no relatives):Phone and email

_Robert Beegel (516) 242-1212; RobertBeegel@hotmail.com_
_Dr. Robert Mendelsohn (516) 384-2484;_
_Mendelso@odelphi.edu_
_Samuel Miller, Esq, (516) 662-4181; samuel.wayne.miller@gmail.com_

Simultaneously with applying for membership in   Inlet Plaza Association Inc. I have made an offer to purchase unit # __304__ . I understand the following:

1. If I am accepted for membership in the Association my membership in the Association will become final when and if Unit # __304__ is purchased.

2. The members are attempting to create a community of congenial and financially responsible residents and to that end the Board of Directors may investigate my background and that of my wife and references. I specifically authorize such an investigation and agree that the information contained herein may be used in that investigation.

3. My application for membership may be rejected arbitrarily and that no reason will be given for any action taken by the Board.

4. The decision of the Board will be final and I will be governed by the determination of the Board. I agree that I or my wife in connection with the use of the information contained herein or any investigation conducted by the Board of Directors shall hold the Board of Directors and officers of The Inlet Plaza Inc., harmless from any action or claim.

Page 3

IN WITNESS whereof, I have executed the above application this ___9th___ day of
febrUAry 2023

Witness: Alyssa Berven _____
                                                         Applicant

                  Samuel Miller _____
                                                         Applicant

FOR THE BOARD OF DIRECTORS

_____ Approved          Date _____

_____ Disapproved

Page 4

I have a signed agreement to purchase unit _304_, as well as a signed application of membership to the   Inlet Plaza, Inc. In this regard, the undersigned, hereby declares that he / she has received and read:

The Declaration of Condominium dated _2/20/20_ as amended:
The Rules & Regulations of the  Inlet Plaza dated _4/24/06_ as amended:
The Bylaws of the Inlet Plaza dated _2/26/80_, as amended.

Signed: _____   Date: _2/9/23_

Print Name: _GEOFFREY T MOTT, ESO_

Page 5

# FITNESS CENTER—POOL
## SAUNA
**LIABILITY WAIVER**
**Inlet Plaza Condominium**

Unit Number
304

| Name: GEOFFREY T. MOTT, ESQ. | Date of Birth: May 17, 1955 |
|---|---|
| Address: 51 Green Meadow Lane Huntington, N.Y. 11743 | |

### Liability Waiver and Indemnity

I,  GEOFFREY T. MOTT, understand use of the sauna, fitness center or pool may cause injury and involve the risk of serious injury, including permanent disability and death.  I also understand that if I have any medical issues or concerns, I must contact my physician for clearance before using the pool, sauna or the fitness center.  I acknowledge that I am solely responsible for my safety and well being and that of any family member, guest or visitor I may allow to use the pool, sauna or fitness center. I agree that I will conduct myself in a reasonable manner at all times and will refrain from using the pool, sauna or fitness center in a manner inconsistent with their intended design and purpose. Thus I understand that Inlet Plaza Condominium does not provide supervision, instruction or assistance in the use of the sauna or fitness center equipment nor any supervision of the pool.

By executing this Agreement I agree to indemnify and hold harmless Inlet Plaza Condominium, Inc. and its insurers, directors, officers and employees from any and all claims, damages or causes of action (including defense costs and attorney's fees through any final court action) by any person or entity that may arise from injuries or damages sustained by me, my family member, guest or visitor while using the pool, sauna or fitness center. Thus I accept and assume full responsibility for any and all injuries or damages (both economic and non-economic) that may occur to me, my family member,  guest or visitor.

This Liability Waiver and Indemnity applies whether or not any claim, demand, action, or suit is based on, or alleged to be based on, or in part, the negligent act or omission of any kind, or similar conduct of those parties that are hereby released and indemnified. I understand and agree that this Liability Waiver and Indemnity shall be construed broadly to provide a waiver and release of liability and indemnity to the maximum extent permissible under Florida law.

Printed Name: GEOFFREY MOTT, ESQ.

Signature: _____                              Date: 2/9/23

Printed Name: Angelica Mott

Signature: _____                              Date: Feb. 9, 2023

11

EXHIBIT "C"

**Cathryn Harris-Marchesi, Esq.**
Mediation, ADR & Legal Services, PLLC
1225 Franklin Avenue, Suite 325, Garden City, NY 11530
Telephone: (516) 512-8903
email: cathryn@cahmediation.com

May 30, 2024

Anika C. Grant, Esq.
Cole, Scott &Kissane, P.A.
Esperante Building
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401

            Re: Request for a Reasonable Accommodation
               *Geoffrey T. Mott v. Inlet Plaza Condominium  Assoc. Inc, et.al*
               Case No. 50-2023-CA-001841-XXXX-MB

Dear Ms. Grant:

     As you may by now be aware, we have entered the above styled litigation and been admitted Pro Hac Vice as co-counsel to Nexterra Law on behalf Mr. Mott, Plaintiff, in the above matter. We are contacting you as the Counsel representing Inlet Plaza Condominium Association, Inc. and Mr. Ron Early  (herein "Defendants"). Please consider this correspondence a formal request for a reasonable accommodation, pursuant to the Federal Fair Housing Act, as Amended ("FHAA") on behalf of Mr. Mott based on his record as a person with a disability and his continuing classification as a person with a disability.  Based upon the Board's recent filings wherein it advanced the position that "in less than twenty-four hours after learning of Mott's disbarment and based solely on the reasons for the disbarment, the Application was denied"[1], we are requesting that Mr. Mott's reasons for disbarment from the New York State Bar not be considered by said Defendants in consideration of Mr. Mott's application to purchase the Property in controversy and that given the absence of any other basis and in light of his "distinguished academic credentials"[2], his application for purchase be approved immediately.

     Through the discovery process in the above action, Defendants and Defense Counsel have taken the depositions of Mr. Mott and his wife and have been provided with the affidavit of Robyn Cirillo, MA, M.S. dates March 25, 2001,  Said depositions and affidavit outlines in great detail Mr. Mott's mental health diagnoses, the multiple inpatient mental health programs attended, hospitalizations and how said mental illness greatly affected major life activities in both Mr. Mott's personal and private life.  As such, Mr. Mott is an individual with a record of a mental disability within the definition of FHAA.

     Furthermore, please find herein attached a letter from Mr. Mott's current treating medical professional, Dr. Mendelsohn, confirming that Mr. Mott continues to be a person who suffers from  mental illness.  Said mental disabilities are now treated and managed with only sporadic

---

[1] Inlet Motion for Summary Judgment, May 6, 2024

[2] Email Board Member Roger Brinner to Board

*Ms. Grant*
*May 30, 2024*
*Page 2 of 2*

symptomatic episodes which impact thinking and processing capabilities only.  In consultation with our retained expert, Professor Matthew Dietz, we believe it is more than clear that the request is amply justified.

To avoid unnecessary escalation, we request a response within two weeks from the date of this letter.  If Mr. Mott's reasonable accommodation is not granted, claims will be brought either in the above referenced litigation or otherwise in Federal Court pursuant to the FHAA for the denial of the reasonable accommodation based on disability as may be deemed appropriate.

We look forward to your prompt reply.  IF you have any questions and need clarification, please do not hesitate to contact me.

Yours truly,

Cathryn Harris-Marchesi, Esq.

# EXHIBIT D

**Wednesday, July 3, 2024 at 10:36:29 Eastern Daylight Time**

---

| | |
|---|---|
| **Subject:** | RE: Request for Accomodation. |
| **Date:** | Tuesday, June 11, 2024 at 11:22:50 AM Eastern Daylight Time |
| **From:** | Laura Combs |
| **To:** | Eric Jacobs, Anika C. Grant, Whitney B. Powell, Cathryn Harris, Steven Liberty, jbaloyra@beckerlawyers.com, Barry A. Postman |
| **Attachments:** | image001.png, image002.png, image003.png, image004.png, image005.png, image006.png, image007.png, image008.png, image058158.png, image763832.png, image479802.png, image597383.png, image632422.png, image051326.png, image469103.png |

Thank you Mr. Jacobs. I just sent out the calendar invite. It has the call-in numbers in there.

Thank you so much,


**Laura Combs**
*Legal Assistant to Attorneys:*
*Anika Grant & Whitney B. Powell*
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Tel: 561-681-5549 | Fax: 561-683-8977
Email: Laura.Combs@csklegal.com

 





---

**From:** Eric Jacobs <ejacobs@nexterralaw.com>
**Sent:** Tuesday, June 11, 2024 10:24 AM
**To:** Laura Combs <Laura.Combs@csklegal.com>; Anika C. Grant <Anika.Grant@csklegal.com>; Whitney B. Powell <Whitney.Powell@csklegal.com>; Cathryn Harris <charris@geoffreymottlaw.com>; Steven Liberty <sliberty@nexterralaw.com>; jbaloyra@beckerlawyers.com; Barry A. Postman <Barry.Postman@csklegal.com>
**Subject:** RE: Request for Accomodation.

10am on 6/17 sounds fine. Thanks . Please send invite.

Click HERE to schedule a quick call anytime

Eric A. Jacobs, J.D., M.B.A.
Nexterra Law
Board Certified Real Estate Litigation and Transactional Practice

AV Rated - Martindale Hubbell
Super Lawyer 2021-Present

(954) 929-0679 Telephone
(954) 243-3100 Mobile

**Mailing Address Only**:

1680 Michigan Avenue
Suite 700 # 182
Miami Beach, Florida 33139

Nexterra Law is a fully virtual law firm unconstrained by walls and other old ways of doing business.  We also don't bill hourly, are available on weekends and genuinely like to build relationships with our clients.  If you aren't a client, maybe you should be.



Confidentiality and Relationship Disclosure. If you are reading this, congratulations, you are probably the first.  For years law firms have included lengthy disclosures at the bottom of their emails which in our view are of, at best, marginal legal value.  We have decided not to do that.  Instead, we will ask that if you got this email and shouldn't have, let us know and please don't read it (though if you've read this, chances are that ship has sailed).  Also, just because we exchange emails doesn't make us your lawyer(s).  If you would like to create an attorney/client relationship, we're glad to hear it and would be happy to provide you with an engagement letter.  As soon as you have received written confirmation from us, you can consider our relationship formed.

---

**From:** Laura Combs <Laura.Combs@csklegal.com>
**Sent:** Tuesday, June 11, 2024 9:53 AM
**To:** Anika C. Grant <Anika.Grant@csklegal.com>; Eric Jacobs <ejacobs@nexterralaw.com>; Whitney B. Powell <Whitney.Powell@csklegal.com>; Cathryn Harris <charris@geoffreymottlaw.com>; Steven Liberty <sliberty@nexterralaw.com>; jbaloyra@beckerlawyers.com; Barry A. Postman <Barry.Postman@csklegal.com>
**Subject:** RE: Request for Accomodation.

Good Morning Mr. Jacobs and Ms. Harris,

Ms. Grant and Mr. Postman are currently available on 6/17 between 10am and 3pm for a call to discuss the attached. Please let me know if this date and time frame will work for you.

Thank you so much,

**Laura Combs**
*Legal Assistant to Attorneys:*
*Anika Grant & Whitney B. Powell*
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Tel: 561-681-5549 | Fax: 561-683-8977
Email: Laura.Combs@csklegal.com

 



   

---

**From:** Anika C. Grant <Anika.Grant@csklegal.com>
**Sent:** Thursday, June 6, 2024 10:54 AM
**To:** Eric Jacobs <ejacobs@nexterralaw.com>; Whitney B. Powell <Whitney.Powell@csklegal.com>; Cathryn Harris <charris@geoffreymottlaw.com>; Steven Liberty <sliberty@nexterralaw.com>; Laura Combs <Laura.Combs@csklegal.com>; jbaloyra@beckerlawyers.com; Barry A. Postman <Barry.Postman@csklegal.com>
**Subject:** RE: Request for Accomodation.

Eric,

We are in receipt of the attached. Laura will reach out and set up a call.

**Anika C. Grant**
*Partner*
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Tel: 561-383-9226 | Fax: 561-683-8977
Email: Anika.Grant@csklegal.com

 

   

---

**From:** Eric Jacobs <ejacobs@nexterralaw.com>
**Sent:** Thursday, June 6, 2024 10:24 AM
**To:** Whitney B. Powell <Whitney.Powell@csklegal.com>; Anika C. Grant <Anika.Grant@csklegal.com>;

Cathryn Harris <charris@geoffreymottlaw.com>; Steven Liberty <sliberty@nexterralaw.com>; Laura Combs <Laura.Combs@csklegal.com>; jbaloyra@beckerlawyers.com
**Cc:** Eric Jacobs <ejacobs@nexterralaw.com>
**Subject:** FW: Request for Accomodation.

Anika and Jose

Neither I nor Cathryn have heard back from you regarding the below and the attached.  I would appreciate an acknowledgment of receipt at a minimum to avoid the possibility of an unnecessary misunderstanding leading to further escalation.

I'm gathering that upon review you would share my sense that it is quite obvious that Mr. Mott is disabled and that his request is not only quite reasonable but would go a long way to addressing many of the issues between the parties.

I would be happy to arrange a call with you and Cathryn at your convenience to explore how we might facilitate Mr. Mott's reasonable accommodation request.

Thank you


Click HERE to schedule a quick call anytime

Eric A. Jacobs, J.D., M.B.A.
Nexterra Law
Board Certified Real Estate Litigation and Transactional Practice
AV Rated - Martindale Hubbell
Super Lawyer 2021-Present

(954) 929-0679 Telephone
(954) 243-3100 Mobile

**Mailing Address Only**:

1680 Michigan Avenue
Suite 700 # 182
Miami Beach, Florida 33139

Nexterra Law is a fully virtual law firm unconstrained by walls and other old ways of doing business.  We also don't bill hourly, are available on weekends and genuinely like to build relationships with our clients.  If you aren't a client, maybe you should be.



Confidentiality and Relationship Disclosure. If you are reading this, congratulations, you are probably the first.  For years law firms have included lengthy disclosures at the bottom of their emails which in our

view are of, at best, marginal legal value.  We have decided not to do that.  Instead, we will ask that if you got this email and shouldn't have, let us know and please don't read it (though if you've read this, chances are that ship has sailed).  Also, just because we exchange emails doesn't make us your lawyer(s).  If you would like to create an attorney/client relationship, we're glad to hear it and would be happy to provide you with an engagement letter.  As soon as you have received written confirmation from us, you can consider our relationship formed.

---

**From:** Eric Jacobs <ejacobs@nexterralaw.com>
**Sent:** Thursday, May 30, 2024 1:27 PM
**To:** Anika C. Grant <Anika.Grant@csklegal.com>; jbaloyra@beckerlawyers.com; Steven Liberty <sliberty@nexterralaw.com>; Eric Jacobs <ejacobs@nexterralaw.com>
**Cc:** Laura Combs <Laura.Combs@csklegal.com>; Barry A. Postman <Barry.Postman@csklegal.com>; Whitney B. Powell <Whitney.Powell@csklegal.com>
**Subject:** Request for Accomodation.

Anika and Jose.

I hope all is well.  As you are aware, the Court has admitted Ms. Cathryn Harris-Marches, Esq. Pro Hac Vice as co-counsel to the undersigned.  Please find herein her formal request for a reasonable accommodation.  Also included herein, find correspondence from Dr. Robert Mendelsohn, Ph.D. who has been Mr. Mott's treating physician since 2008.

Please feel free to contact me once you have had an opportunity to review with your client and advise them accordingly.

Thank you



Click HERE to schedule a quick call anytime

Eric A. Jacobs, J.D., M.B.A.
Nexterra Law
Board Certified Real Estate Litigation and Transactional Practice
AV Rated - Martindale Hubbell
Super Lawyer 2021-Present

(954) 929-0679 Telephone
(954) 243-3100 Mobile

**<u>Mailing Address Only</u>**:

1680 Michigan Avenue
Suite 700 # 182
Miami Beach, Florida 33139

# EXHIBIT "E"

**Wednesday, July 3, 2024 at 10:35:05 Eastern Daylight Time**

---

| | |
|---|---|
| **Subject:** | RE: Request for Accomodation. |
| **Date:** | Friday, June 21, 2024 at 4:18:44 PM Eastern Daylight Time |
| **From:** | Eric Jacobs |
| **To:** | Anika C. Grant, jbaloyra@beckerlawyers.com, Steven Liberty, Cathryn Harris, Steven Liberty |
| **CC:** | Laura Combs, Barry A. Postman, Whitney B. Powell |
| **Attachments:** | image001.png, image002.png, image003.png, image004.png, image005.png, image006.png, image007.png, image008.png |

Anika

I had three lawyers on the phone (including myself) and inquired before I emailed you to make sure I had not misunderstood something.  Neither I nor Cathryn agreed to hold off on taking any action then and am not in a position to agree to hold off on taking any action at this time.  We were, if anything expecting a response from the "other law firm" that Barry spoke of and could not have agreed to give you an extension because Barry said you all had nothing to do with it.  I don't want to quibble with you needlessly and am not trying to make things hard on you.  My client requested a Reasonable Accommodation weeks ago and we were asked to coordinate a call.  We then got on that call and were told that the call was at our request.  We were then told that the request would likely be denied even though you (Barry) couldn't say because you all had nothing to do with it as there was a new law firm.  Now it seems there is not another law firm and you are asking me if I can extend the time for (I don't even know who) to provide a response.  I'm sure you can appreciate my client's disinclination to acquiesce to any further delay(s).

With that said, I doubt anything will be done before end of day Monday if that helps any.

Click HERE to schedule a quick call anytime

Eric A. Jacobs, J.D., M.B.A.
Nexterra Law
Board Certified Real Estate Litigation and Transactional Practice
AV Rated - Martindale Hubbell
Super Lawyer 2021-Present

(954) 929-0679 Telephone
(954) 243-3100 Mobile

**Mailing Address Only**:

1680 Michigan Avenue
Suite 700 # 182
Miami Beach, Florida 33139

Nexterra Law is a fully virtual law firm unconstrained by walls and other old ways of doing business.  We also don't bill hourly, are available on weekends and genuinely like to build relationships with our clients.  If you aren't a client, maybe you should be.



Confidentiality and Relationship Disclosure. If you are reading this, congratulations, you are probably the first.  For years law firms have included lengthy disclosures at the bottom of their emails which in our view are of, at best, marginal legal value.  We have decided not to do that.  Instead, we will ask that if you got this email and shouldn't have, let us know and please don't read it (though if you've read this, chances are that ship has sailed).  Also, just because we exchange emails doesn't make us your lawyer(s).  If you would like to create an attorney/client relationship, we're glad to hear it and would be happy to provide you with an engagement letter.  As soon as you have received written confirmation from us, you can consider our relationship formed.

**From:** Anika C. Grant <Anika.Grant@csklegal.com>
**Sent:** Friday, June 21, 2024 4:10 PM
**To:** Eric Jacobs <ejacobs@nexterralaw.com>; jbaloyra@beckerlawyers.com; Steven Liberty <sliberty@nexterralaw.com>; Cathryn Harris <charris@geoffreymottlaw.com>; Steven Liberty <sliberty@nexterralaw.com>
**Cc:** Laura Combs <Laura.Combs@csklegal.com>; Barry A. Postman <Barry.Postman@csklegal.com>; Whitney B. Powell <Whitney.Powell@csklegal.com>
**Subject:** RE: Request for Accomodation.

Eric,

I get it but that is truly what my notes reflect regarding the call. I agree we have worked fairly well together through this case. With that said, are you amenable to an extension of time for the response?

**Anika C. Grant**
*Partner*
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Tel: 561-383-9226 | Fax: 561-683-8977
Email: Anika.Grant@csklegal.com

  

   

**From:** Eric Jacobs <ejacobs@nexterralaw.com>
**Sent:** Friday, June 21, 2024 3:06 PM
**To:** Anika C. Grant <Anika.Grant@csklegal.com>; jbaloyra@beckerlawyers.com; Steven Liberty <sliberty@nexterralaw.com>; Cathryn Harris <charris@geoffreymottlaw.com>; Steven Liberty <sliberty@nexterralaw.com>
**Cc:** Laura Combs <Laura.Combs@csklegal.com>; Barry A. Postman <Barry.Postman@csklegal.com>; Whitney B. Powell <Whitney.Powell@csklegal.com>
**Subject:** RE: Request for Accomodation.

I'm sorry Anika but that is utterly false.  Barry made a point of saying over and over again that while he suspected the matter would be denied given where the litigation is (as he put it), it was totally not up to you all because a new law firm had been retained and the matter was being reviewed and he expected a response by the end of the week.  I agreed to nothing.

Regardless, it seems you are now saying there is no "other counsel" which leaves me even more dumbfounded as there is not even an arguably defensible basis to have not received a response to this point.

I know this is not your fault and do not mean to direct my frustration in your direction as we have worked pretty well together through this. Having said that, the request for a RA is a wholly separate matter and we are not waiting any longer for whomever is supposed to respond to engage.

Thanks and as always, feel free to call me anytime though I will be traveling most of next week and may be slower than usual.


Click HERE to schedule a quick call anytime

Eric A. Jacobs, J.D., M.B.A.
Nexterra Law
Board Certified Real Estate Litigation and Transactional Practice
AV Rated - Martindale Hubbell
Super Lawyer 2021-Present

(954) 929-0679 Telephone
(954) 243-3100 Mobile

**Mailing Address Only**:

1680 Michigan Avenue
Suite 700 # 182
Miami Beach, Florida 33139


Nexterra Law is a fully virtual law firm unconstrained by walls and other old ways of doing business.  We also don't bill hourly, are available on weekends and genuinely like to build relationships with our clients.  If you aren't a client, maybe you should be.

 NEXTERRA LAW

Confidentiality and Relationship Disclosure. If you are reading this, congratulations, you are probably the first. For years law firms have included lengthy disclosures at the bottom of their emails which in our view are of, at best, marginal legal value. We have decided not to do that. Instead, we will ask that if you got this email and shouldn't have, let us know and please don't read it (though if you've read this, chances are that ship has sailed). Also, just because we exchange emails doesn't make us your lawyer(s). If you would like to create an attorney/client relationship, we're glad to hear it and would be happy to provide you with an engagement letter. As soon as you have received written confirmation from us, you can consider our relationship formed.

**From:** Anika C. Grant <Anika.Grant@csklegal.com>
**Sent:** Friday, June 21, 2024 2:35 PM
**To:** Eric Jacobs <ejacobs@nexterralaw.com>; jbaloyra@beckerlawyers.com; Steven Liberty <sliberty@nexterralaw.com>; Cathryn Harris <charris@geoffreymottlaw.com>
**Cc:** Laura Combs <Laura.Combs@csklegal.com>; Barry A. Postman <Barry.Postman@csklegal.com>; Whitney B. Powell <Whitney.Powell@csklegal.com>
**Subject:** RE: Request for Accomodation.

Eric,

During the call we discussed that the response would be either at the end of this week or early next week. You agreed to that timeframe. Also no one communicated that a "new" attorney was being retained relative to the opinion but instead it was noted that the Board would seek advise on how to respond. A response will be provided within the timeframe agreed upon during the call.

**Anika C. Grant**
*Partner*
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Tel: 561-383-9226 | Fax: 561-683-8977
Email: Anika.Grant@csklegal.com

 
*The Florida Law Firm*


   

**From:** Eric Jacobs <ejacobs@nexterralaw.com>
**Sent:** Friday, June 21, 2024 2:15 PM
**To:** Anika C. Grant <Anika.Grant@csklegal.com>; jbaloyra@beckerlawyers.com; Steven Liberty <sliberty@nexterralaw.com>; Cathryn Harris <charris@geoffreymottlaw.com>
**Cc:** Laura Combs <Laura.Combs@csklegal.com>; Barry A. Postman <Barry.Postman@csklegal.com>; Whitney B. Powell <Whitney.Powell@csklegal.com>
**Subject:** RE: Request for Accomodation.

Anika/Barry

Neither I nor Cathryn have heard from anyone regarding my client's request for a Reasonable Accomodation.  Indeed, we have not so much as received the name of the other attorney that Barry advised was retained nor received any letter of rep from them.  That being the case, we are interpreting the total lack of cooperation or communication to be a denial and will proceed accordingly.

Click HERE to schedule a quick call anytime

Eric A. Jacobs, J.D., M.B.A.
Nexterra Law
Board Certified Real Estate Litigation and Transactional Practice
AV Rated - Martindale Hubbell
Super Lawyer 2021-Present

(954) 929-0679 Telephone
(954) 243-3100 Mobile

**Mailing Address Only**:

1680 Michigan Avenue
Suite 700 # 182
Miami Beach, Florida 33139

Nexterra Law is a fully virtual law firm unconstrained by walls and other old ways of doing business.  We also don't bill hourly, are available on weekends and genuinely like to build relationships with our clients.  If you aren't a client, maybe you should be.



Confidentiality and Relationship Disclosure. If you are reading this, congratulations, you are probably the first.  For years law firms have included lengthy disclosures at the bottom of their emails which in our view are of, at best, marginal legal value.  We have decided not to do that.  Instead, we will ask that if you got this email and shouldn't have, let us know and please don't read it (though if you've read this, chances are that ship has sailed).  Also, just because we exchange emails doesn't make us your lawyer(s).  If you would like to create an attorney/client relationship, we're glad to hear it and would be

# EXHIBIT "F"

**Wednesday, July 3, 2024 at 10:33:14 Eastern Daylight Tim**

| | |
|---|---|
| **Subject:** | RE: Request for Accommodation. - Inlet Plaza - Mott |
| **Date:** | Monday, June 24, 2024 at 3:30:31 PM Eastern Daylight Time |
| **From:** | Burnett, JoAnn |
| **To:** | Eric Jacobs |
| **CC:** | Anika C. Grant, Barry A. Postman, Direktor, Kenneth, Gomez-Rivera, Yvette, Steven Liberty, Cathryn Harris |
| **Attachments:** | image003.png, image004.png, image005.png, image006.png, image007.png, image008.png, image010.png, image011.jpg, image012.png, image013.png, image014.png, image015.png, image016.png, image375497.png, image536992.png, image021550.png, image900452.png, image144062.png, image874949.png, image921599.png, image470927.jpg, image018461.png, image181912.png, image082386.png, image956073.png |

Eric,

Thank you.  I appreciate the extension.  I will be back in touch with a response.

Regards,
JoAnn


**JoAnn Nesta Burnett**
Attorney at Law
Board Certified in Condominium and Planned Development Law



Becker & Poliakoff
1 East Broward Blvd., Suite 1800
Ft. Lauderdale, FL 33301

 954.985.4192

954.985.4176

JBURNETT@beckerlawyers.com

www.beckerlawyers.com

Connect with me on LinkedIn

Follow me on X



Follow Becker on...

1 of 5



**Confidentiality Note**: This message, together with any attachments, may contain privileged and confidential information. If the reader of this message is not the intended recipient, you are hereby notified that any examination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us by reply e-mail and permanently delete the original message, along with any attachments. Thank you.

**From:** Eric Jacobs <ejacobs@nexterralaw.com>
**Sent:** Monday, June 24, 2024 3:20 PM
**To:** Burnett, JoAnn <JBURNETT@beckerlawyers.com>
**Cc:** Anika C. Grant <Anika.Grant@csklegal.com>; Barry A. Postman <Barry.Postman@csklegal.com>; Direkto Kenneth <kdirektor@beckerlawyers.com>; Gomez-Rivera, Yvette <YGomezRivera@beckerlawyers.com>; Steven Liberty <sliberty@nexterralaw.com>; Cathryn Harris <charris@geoffreymottlaw.com>
**Subject:** Re: Request for Accommodation. - Inlet Plaza - Mott

JoAnn

Very nice to hear from you. The basis for our advancement of our position was the complete stonewalling to the request by the Assocation followed by the non-disclosure of what "other" attorney was involved, followed by a claim that there was no other attorney which brings us to where we are now.  Having said that, and given your involvement of late, I'm happy to wait a week and encourage you to reach out if you would like to discuss this matter in any more depth.

thank you

Eric A. Jacobs, J.D., M.B.A.
Nexterra Law
(954)929-0679 Telephone
(954)243-3100 Mobile

Mailing Address Only:

1680 Michigan Avenue
Suite 700 #182
Miami Beach, Florida 33139

Nexterra Law is a fully virtual law firm I'm constrained by walls and other old ways of doing business. We also don't bill hourly are available on the weekends and genuinely like to build relationships with their clients if you want a client maybe you should be.

Confidentiality and Relationship Disclosure.  If you're reading this, congratulations, you're probably the first. For years law firms have included lengthy disclosures at the bottom of their emails which in our view are of, at best, marginal legal value. We have decided not to do that.

2 of 5

Instead if you get this email and you shouldn't have let us now and please don't read it (though if you've read this, chances are that ship has sailed). Also just because we exchange emails doesn't make us your lawyer. If you would like to create an attorney / client relationship we're glad to hear it and would be happy to provide you with an engagement letter.  As soon as you receive written confirmation from us, you can consider our relationship formed.

---

**From:** Burnett, JoAnn <JBURNETT@beckerlawyers.com>
**Sent:** Monday, June 24, 2024 2:11 PM
**To:** Eric Jacobs <ejacobs@nexterralaw.com>
**Cc:** Anika C. Grant <Anika.Grant@csklegal.com>; Barry A. Postman <Barry.Postman@csklegal.com>
Direktor, Kenneth <kdirektor@beckerlawyers.com>; Gomez-Rivera, Yvette
<YGomezRivera@beckerlawyers.com>
**Subject:** FW: Request for Accommodation. - Inlet Plaza - Mott

Eric,

My firm was retained to evaluate Mr. Mott's requested accommodation.  An opinion was issued to the Board of Directors of Inlet Plaza today.  The Board is still conducting its meaningful review of this request, as required by law.  Your failure to permit the Association with the necessary time to review the request is a termination of the required interactive process.  Further, your unilateral decision to provide the Association with less than thirty day in which to evaluate this very uncommon request also violates federal law.   It is hoped that you and your client will permit the Association at least one week's time to review the opinion and to engage in a dialogue with its counsel to address any questions that might remain. The Association has not denied the request.  Instead, the Association has retained counsel and sought an opinion which it just received today. If the lawsuit is filed prematurely, these defenses will be raised which will certainly be an impediment to your client moving forward. There is no prejudice to your client.  He's already filed suit and litigated the matter for well over a year.  There is a lis pendens on the property.   The failure to provide the Association with the necessary time to conduct its review of this request is a fatal flaw to your client's claim.

Please confirm the Association will be provided with at least one week to provide a response to the request.

JoAnn


**JoAnn Nesta Burnett**
Attorney at Law
Board Certified in Condominium and Planned Development Law



Becker & Poliakoff
1 East Broward Blvd., Suite 1800